**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ACE ARTS, LLC, | 1:18-CV-03396 (AJN) |
|                 Plaintiff, | |
|    v. | |
| SONY/ATV MUSIC PUBLISHING, LLC, | |
|                 Defendants. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

FACTS............................................................................................................... 6

    Background.................................................................................................... 6

    Plaintiff's October 2013 Action Against SATV............................................ 8

    The UK Court's Decision Was Determinative of Ace's Claims in 2013.......... 9

    Apple Owns The Original Documentary ....................................................11

    Ace's Documents Negate Any Alleged Right to Re-Edit The Documentary...................12

ARGUMENT ...................................................................................................15

    I.    ACE LACKS STANDING TO BRING THIS LAWSUIT ...........................15

    II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE PARTY...................................19

CONCLUSION ................................................................................................22

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(s)**

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
    436 F.3d 82 (2d Cir. 2006) ...............................................................................15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................15

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    433 F.3d 181 (2d Cir. 2005) .............................................................................16

*Colliton v. Donnelly*,
    399 F. App'x 619 (2d Cir. 2010) ...............................................................15, 16

*Dumann Realty, LLC v. Faust*,
    267 F.R.D 101 (S.D.N.Y. 2010) .......................................................................19

*First Fin. Mktg. Servs. Grp., Inc. v. Field Promotions, Inc.*,
    286 F. Supp. 295 (S.D.N.Y. 1968).....................................................................21

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ...............................................................................16

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013) ....................................................................................16

*Graham v. Barriger*,
    699 F. Supp. 2d 612 (S.D.N.Y. 2009)................................................................16

*John Wiley & Sons, Inc. v. DRK Photo*,
    998 F. Supp.2d 262 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018) ............20

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991) .............................................................................16

*Lipton v. Nature Co.*,
    781 F. Supp. 1032 (S.D.N.Y. 1992).....................................................................21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................16

*Oparaji v. City of N.Y.*,
    No. 97-14967, 1998 U.S. App. LEXIS 14967 (2d Cir. Apr. 21, 1998) .................16

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982)........................................................................................16

**CASES**                                                                                           **PAGE(s)**

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
  890 F. Supp. 2d 398 (S.D.N.Y. 2012)...................................................................................20

*Viacom Int'l, Inc. v. Kearney*,
  212 F.3d 721 (2d Cir. 2000), *overruled on other grounds, Balestriere PLLC v. CMA Trading,*
  *Inc.*, No. 11 Civ. 9459, 2014 WL 929813 (S.D.N.Y. Mar. 7, 2014) .................................19, 20

*Wales Indus. Inc. v. Hasbro Bradley, Inc.*,
  612 F. Supp. 510, 517 (S.D.N.Y.1985).................................................................................21

*Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*,
  215 F.3d 247 (2d Cir. 2000) .................................................................................................17

**RULES AND REGULATIONS**

Fed. R. Civ. P. 11 .......................................................................................................................6

Fed. R. Civ. P. 12(b)(1)................................................................................................1, 15, 22

Fed. R. Civ. P. 12(b)(6)......................................................................................................*passim*

Fed. R. 12(b)(7) .......................................................................................................1, 19, 22

Fed. R. Civ. P. 19 .....................................................................................................................19

Fed. R. Civ. P. 19(a)(1) ......................................................................................................18, 19

Fed. R. Civ. P. 19(b) ...................................................................................................1, 4, 21, 22

**TREATISE**

1 *Federal Rules of Civil Procedure, Rules and Commentary Rule* (Feb. 2018) ...........................19

Defendant Sony/ATV Music Publishing LLC ("SATV") submits this Memorandum of Law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(b)(7) and 19(b), to dismiss the complaint of Plaintiff, Ace Arts, LLC ("Ace") for lack of standing and failure to join an indispensable party.

## PRELIMINARY STATEMENT

This is the third lawsuit that Ace has brought against SATV, the copyright owner of the extraordinary musical compositions written by John Lennon and Paul McCartney. The first two lawsuits, one in federal court in California and one in this Court, were both dismissed. The first case was dismissed (only after SATV was forced to send counsel for Ace a Rule 11 letter) because there was no basis for jurisdiction in California. After SATV and co-defendant, Apple Corps Ltd. ("Apple"), successfully secured the dismissal of all but one claim in the second action (filed in this Court), Ace "voluntarily" dismissed the remaining claim based on a final judgment by a court in the United Kingdom (made after trial) that Ace's licensor, WPMC Limited ("WPMC"), was an infringer of SATV's copyrights, having used Lennon/McCartney songs in a documentary film, The Beatles: The Lost Concert (the "Original Documentary"), without license.

The Original Documentary, produced and owned by two related UK companies, Iambic Media, Ltd. ("Iambic") and WPMC (both then solely owned by Christopher Hunt), embodied footage from The Beatles' first concert in the United States in 1964 ("The Beatles Concert Video"), including eight Lennon/McCartney songs owned by SATV without license from SATV. WPMC claimed its use of the Lennon/McCartney songs was "fair use" under United

States Copyright Act, a claim rejected by the UK Court in finding WPMC to be an infringer.[1] Upon its finding of infringement, the UK Court issued a permanent injunction precluding any further exploitation of the Original Documentary by any person or entity claiming rights through WPMC, an injunction order that SATV filed with this Court on August 4, 2015 and served upon Ace's counsel in this action.  The UK injunction order required WPMC to turn over all copies of the Original Documentary and The Beatles Concert Video, save one, to SATV's solicitors.  The sole reason that the UK Court permitted WPMC to retain one copy was because the injunction order permitted WPMC to request the UK Court's permission to edit  the Original Documentary if it wished to try to satisfy a "fair use" defense.

At no time since the UK Court issued its injunction order did WPMC seek permission to edit the Original Documentary or The Beatles Concert Video.  In fact, after a costs award was issued against WPMC and its director, WPMC, like Iambic, was placed into liquidation in the UK.

Despite the explicit requirements of the UK injunction order prohibiting any exploitation or editing of the Original Documentary by any person or entity claiming rights through WPMC, and that WPMC surrender all copies of the Original Documentary and The Beatles Concert Video, save one, Ace now claims that it has *re-edited* the Original Documentary (the "Re-Edit") – the contents of which it has not disclosed, the authority for which is non-existent and its possession of such Original Documentary being in violation of the UK injunction order - and alleges that the "Re-Edit has been pitched to a distributor who

---

[11] Before the UK trial, Iambic was put  into liquidation (which delayed the trial of the UK action for some period of time).  Ultimately, the case thereafter proceeded against WPMC, which claimed to be the sole owner of the rights in the Original Documentary.

has expressed, and continues to express, interest in the exhibition and distribution of the Re-Edit." (Buckley Decl., Ex. 1 at par. 11.)[2]

It is undisputed that Ace has no synchronization license from SATV to use the Lennon/McCartney songs in this Re-Edit.[3]  Instead, Ace seeks a declaration that it does not need a license because the Lennon/McCartney songs purportedly fell into the public domain, or alternatively, that its use of the songs in the Re-Edit constitutes "fair use" under the United States Copyright Act.  Both of these arguments were already rejected by the UK Court, a determination that is entitled to comity.  While the UK injunction order permitted WPMC to seek the UK Court's permission to edit the Original Documentary and The Beatles Concert Video to try to fit its use of the Lennon/McCartney songs into "fair use," that specific permission was never sought and never obtained.

But Ace's violation of the UK injunction order is only one reason why this action should be dismissed.  Unmentioned in Ace's complaint is the fact, based on indisputable documentary evidence, that SATV bought all of Iambic's rights in the Original Documentary from the Liquidator of Iambic and SATV thereafter bought all of WPMC's rights in the Original Documentary from the Liquidator of WPMC, and subsequently assigned those rights to Apple. Consequently, by virtue of these acquisitions, the only possible entities that own the Original Documentary are SATV and Apple.  Not only does Ace not have any license from SATV to use

---

[2] References to the "Buckley Decl." are to the accompanying declaration of Lisa M. Buckley, Esq., sworn to on July 2, 2018, and in support of SATV's motion to dismiss the complaint.

[3] The Original Documentary synchronizes The Beatles' musical performance of the Compositions with the visual images in the film. The right to reproduce a composition in synchronization with a visual image (*i.e.*, a film) requires a synchronization license from the copyright owner. No matter what the Re-Edit may be, unless there are no Lennon/McCartney songs in the Re-Edit – in which case there is no purpose to this case – the Re-Edit is both a clear violation of the UK injunction order and an unlicensed use of SATV's copyrights.

the Lennon/McCartney songs in the Re-Edit, it has no authorization from either SATV or Apple to distribute, edit, exploit or use the Original Documentary in any fashion.

Thus, the issue of whether the Re-Edit could provide Ace with a fair use defense is actually only a question that one reaches if Ace first had any right to edit, distribute or exploit the Original Documentary. And because SATV and/or Apple now own all rights in the Original Documentary that were owned by Iambic and WPMC and never granted Ace any rights to edit or exploit it, Ace has no rights in the Original Documentary, and had no authority to do the Re-Edit. It thus has no standing to assert the claims it asserts and even if it could, it cannot pursue this action in the absence of Apple which, as an owner of the Original Documentary (as successor-in-interest to the rights of WPMC), is an indispensable party.

The case should therefore be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because Ace lacks standing to assert a "fair use" or public domain claim because the Re-Edit itself is not authorized by SATV or Apple (or by the UK Court). Additionally, dismissal is warranted under Fed. R. Civ. P. 12(b)(7) and 19(b) for failure to join Apple, the United Kingdom company that owns both the rights to commercially exploit The Beatles' names and likenesses, as well as the Original Documentary, and without which complete relief cannot be granted.

Ace has consistently admitted that it obtained its rights to distribute the Original Documentary from WPMC, pursuant to an unsigned agreement which provided only a one year term (long since expired) and no right to edit the Original Documentary. WPMC's rights have since passed to its Liquidator and then to SATV by purchase and then to Apple by assignment. Neither SATV nor Apple have provided any such right to Ace. Ace thus has no rights with respect to the Original Documentary.

4

So how then does Ace purport to have any rights in the Original Documentary that would have enabled it to do the Re-Edit?  Ignoring the allegations in its own complaint, and the prior pleadings filed in this Court, in which it claimed that its right to exploit the Original Documentary in the United States derived from its purported licensors, Iambic and WPMC, Ace now contends that neither of them actually had any rights in the Original Documentary, and that the rights are owned by a company named Concert Magic Company ("CMC").

But according to Ace's allegations, CMC only owned a "Betacam" copy of The Beatles Concert Video (which it had assigned to Iambic, and which Iambic assigned to WPMC) and it never had any interest in the Original Documentary.[4]  Ace's counsel has provided SATV's counsel with two documents by which he contends Iambic and WPMC supposedly granted rights in the Original Documentary to CMC (never alleged here before).  In fact, however, the very documents "relied" upon by Ace's counsel conclusively refute his claim.

First, one of the alleged agreements is unsigned by WPMC (at least the copy provided by Ace's counsel appears unsigned).  But even if signed, neither alleged agreement conveys anything to CMC other than, at most, recovery of the Betacam copy of The Beatles Concert Video (the very same footage CMC supposedly sold to Iambic).  Neither alleged agreement conveys to CMC any rights in the Original Documentary, which remained solely with Iambic and/or WPMC and which now belong to SATV and/or Apple.[5]

---

[4] While it is not necessary to reach this issue now, at most, the only thing Concert Magic acquired when it bought a duplicate copy of The Beatles Concert Video-- and Ace itself alleged in its original complaint in this action that Apple owns the original master tape – is the right to possess but not exploit the copy. Owning a physical copy of a recorded performance does not convey any public performance or exhibition rights.

[5] Even if CMC could strip the Betacam copy of The Beatles Concert Video from the Original Documentary, because Apple owns the original master video (as Ace admitted in its original and amended complaint in the prior action), Apple could simply use its own version of the Beatles Concert Video in connection with the Original Documentary if it chose to do so. Ace and CMC have no rights at all in the Original Documentary.

SATV has sought for more than a month to persuade Ace and its counsel to dismiss this action based on all of the foregoing undisputed facts. They refused to do so, even after SATV's counsel provided all of the agreements by which SATV and Apple acquired all of the rights of Iambic and WPMC and explained that the alleged CMC agreements on which Ace bases its supposed right to have edited the Original Documentary, actually provided CMC with no such rights. Because Ace and its counsel have unreasonably refused, without any good-faith basis, to dismiss this case, SATV has been forced to make this motion and to incur unnecessary expense. As such, SATV has sent Ace and its counsel notice of its intent to seek sanctions under Fed. R. Civ. P. 11.

## FACTS

SATV owns the worldwide copyrights in the compositions written by John Lennon and Paul McCartney including for these purposes: "She Loves You," "All My Loving," "I Wanna Hold Your Hand," "This Boy," "From Me to You," "I Saw Her Standing There" and "I Wanna Be Your Man." SATV also owns 66.66% of the US copyrights and 100% of the foreign copyrights in "Twist & Shout" (collectively, the "Compositions"). The Compositions all are registered with the US Copyright Office. (Buckley Decl., Ex. 22.)

### Background

In 2010, Christopher Hunt - then, the sole owner of Iambic and WPMC - approached SATV regarding a documentary he supposedly was in the process of producing about The Beatles' first concert in the United States in 1964 (which was shown on closed circuit at the time), the centerpiece being the supposedly long-lost video footage of the concert. For the next two years, Hunt sought, in fits and starts, to obtain a synchronization license from SATV,

but the parties never reached an agreement and SATV never issued a synchronization license to Hunt/Iambic/WPMC. (Buckley Decl., Ex. 7 at pars. 23 through 90.)

In April 2012, SATV discovered that Hunt, acting through Ace, intended to release the Original Documentary in the United States in May of 2012 under a distribution agreement with Screenvision. (*Id.*, Ex. 5.)  In addition to owning Iambic and WPMC, Hunt was a principal of Ace and its Chief Executive Officer.  In May of 2012, SATV and its UK affiliate brought a copyright infringement action against Iambic and WPMC in the United Kingdom to prevent the unlicensed exploitation of the Lennon/McCartney songs in the Original Documentary. (*Id.*) Iambic and WPMC  claimed that they did not need a license because The Beatles Concert Video supposedly had been "published" without a copyright notice, or alternatively, that their use of the Lennon/McCartney songs constituted a "fair use." (Buckley Decl., Ex. 6.)

Nevertheless, on behalf of himself, Iambic and WPMC, Hunt consented to the entry of a temporary injunction in the UK court providing that pending the trial of the UK Action, Iambic and WPMC would not "(whether by its directors, officers, employees or agents or howsoever otherwise) take any step to or authorize any other entity, ***including but not limited to Ace Arts LLC (Ace),*** to take any step to exploit the documentary film 'The Beatles: The Lost Concert' (the 'Documentary') featuring any or any substantial part of any of the musical compositions set out in the Schedule to this Consent Order whether through theatrical exhibition in the USA pursuant to Ace's agreement with Screenvision, Exhibition Inc. ('Screenvision') or otherwise howsoever." (Buckley Decl., Ex. 21; emphasis added.)

The UK Action stalled for a period of time because Hunt placed Iambic into liquidation in the UK and filed a personal bankruptcy (following an adverse judgment against them in another case involving the unlicensed use of music, a case in which the Court found Hunt's

testimony to be incredible). (Buckley Decl., Ex. 7 at par. 3.)  On January 14, 2014, SATV entered into a deed of settlement with Iambic's liquidator under which he assigned to SATV all of Iambic's rights in the Original Documentary, the concert footage and "any claims which Iambic has or may have against any of the Hunt Parties in relation to the Concert Footage and/or the Documentary…." (*Id.*, Ex. 10.)  The "Hunt Parties" are defined as Christopher Hunt, WPMC, Ace Arts, LLC and any of their officers, employees, agents, owners and members. (*Id.*)  Due to his personal bankruptcy, Hunt supposedly "resigned" as a director of WPMC and handpicked his friend, David Bailey, to replace him and to acquire a majority shareholding in WPMC. (*Id.* at Ex. 7 at par. 3.)

### Plaintiff's October 2013 Action Against SATV

Notwithstanding that Hunt consented to the entry of temporary injunction on behalf of himself, Iambic, WPMC, and specifically Ace, in October 2013 (after dismissing the California action),  Ace filed a lawsuit against SATV and Apple in this Court alleging that SATV and Apple illegally conspired to prevent Ace from exhibiting the Original Documentary at New York City's Ziegfeld Theater. (Buckley Decl., Ex. 4.)  Ace filed an Amended Complaint in January of 2014.  (*Id.*, Ex. 3.)  SATV and Apple successfully moved to dismiss all of Ace's claims other than its claim seeking a declaration that SATV's Lennon/McCartney songs fell into the public domain, that SATV purportedly misused its copyrights, and that Ace's use of Lennon/McCartney songs constituted a fair use. (Buckley Decl., Ex. 15.) That is exactly the same declaration Ace seeks here, only this time with respect to a supposedly re-edited version of the Original Documentary that Ace claims it owns. (*Id.*, Ex. 1.)  As discussed below, Ace ultimately voluntarily dismissed its sole remaining claim for a declaratory judgment after the UK Court ruled in favor of SATV and issued its injunction order.

**The UK Court's Decision Was Determinative of Ace's Claims in 2013**

On July 1, 2015, following a trial, the Hon. Mr. Justice Arnold, High Court of Justice, Chancery Division, United Kingdom, issued a decision in the UK Action which (1) found in favor of SATV on its copyright infringement claims against WPMC, and (2) rejected the same arguments that Ace made here (and is again making here), namely, that the Lennon/McCartney songs were in the public domain, and that use of the songs without license in the Original Documentary constituted a fair use.  (Buckley Decl., Ex. at p. 2, par. 4 and p. 3, par. 5.)  The UK Court issued a permanent injunction prohibiting WPMC from exploiting or making copies of the Original Documentary, or authorizing anyone else to do so.  (*Id.*, Ex. 23.)

The UK Court stressed that the Original Documentary incorporated almost the entirety of The Beatles Concert Video and the complete performances of the Lennon/McCartney songs and repeatedly uses parts of the performances of the songs in the soundtrack at other points. (*Id.* at par. 19.)  The UK Court gave WPMC "or any other person with knowledge of the Order" the "liberty to apply for a declaration and/or variation of this Order so as to provide that it may edit the Concert Video and/or Documentary in the realistic expectation (such expectation to be assessed objectively) that the product of such editing" will amount to 'Fair Use'" under the US Copyright Act. (*Id.*, Ex. 23 at par. 6.)  WPMC never made any such application and neither did Ace.

The permanent injunction also required that WPMC deliver to SATV's solicitors all copies of the Original Documentary and the concert footage in its power, custody or control, except for one copy that WPMC was permitted to keep in case it wished to make an application to the UK Court to re-edit the film.  (*Id.* at pars. 6 and 7.)  Thus, the UK Court's injunction required WPMC to turn over to SATV any copy of the Original Documentary and the concert

footage in the possession of Ace, its licensee (which, based on Ace's present claims, Ace failed to provide). Ace's complaint does not explain where it obtained a copy of the Original Documentary for re-editing. If it obtained the copy from WPMC or from an entity that obtained a copy from WPMC, WPMC's failure to turn it over to SATV's solicitors is a violation of the permanent injunction order. Ace was fully aware of the terms and conditions of the UK injunction order because SATV served it on Ace and filed it with this Court. (Buckley Decl., Ex. 14.) Nevertheless, according to Ace's complaint, it re-edited the Original Documentary without seeking the UK Court's permission (and without any authority from SATV, Apple or the liquidators of Iambic and WPMC).

On July 14, 2015, SATV filed a letter informing this Court that a decision had been rendered in the UK Action. (*Id.*) The Court ordered Ace to inform SATV and Apple by July 24 whether, in light of the UK Decision, Ace intended to withdraw its action. (Buckley Decl., Ex. 13.) Thereafter, on August 4, 2015, SATV filed a second letter with the Court, providing a copy of the UK Court's injunction order, a copy of which was served on Ace. SATV renewed its request that the action be dismissed with prejudice. (*See*, *id.* at Ex. 13.) Ace responded the next day, acknowledging that further prosecution of its case was not appropriate at that time. Ace stated, however, that WPMC intended to appeal the UK Court's Decision and requested that the case be administratively closed subject to reopening after any further developments in the UK. (*Id.*)

The Court stayed the action and administratively closed the matter subject to legal developments in the UK Action, and required Ace to file a letter in 6 months updating the

Court on the status of the UK Action.[6]  (*Id.*)  On February 8, 2016, Ace filed a letter with the Court acknowledging that WPMC had neither appealed the UK Court's Decision, nor sought permission to re-edit the Original Documentary, but requesting that the Court maintain the status quo.  (*Id.* at Ex. 12.)  Six months after that, Ace agreed that the case should be dismissed. The dismissal necessarily confirmed Ace's understanding that if its licensor was permanently enjoined from exploiting the Original Documentary and underlying footage, then neither could Ace exploit it.

Following a significant costs order, WPMC filed a liquidation proceeding in the UK. By deed dated March 29, 2018, WPMC's liquidator irrevocably and unconditionally assigned to SATV all right, title and interest that WPMC has in the concert footage and the Original Documentary. (Buckley Decl., Ex. 8.)  Later the same day, SATV assigned its rights under the deed to Apple.  (*Id.*, Ex. 9.) It is irrefutable that it is Apple and/or SATV (pursuant to the assignment from Iambic's Liquidator) that own the Original Documentary, not Ace and not CMC.

### Apple Owns The Original Documentary

After being served with Ace's new complaint, SATV's counsel promptly contacted Ace's counsel, advising him that Ace's lawsuit against SATV is ill-conceived. Although SATV owns the copyrighted Lennon/McCartney songs embodied in the Original Documentary, which have not been licensed by SATV, even if SATV were willing to issue a synch license, Ace could still not commercially exploit the Original Documentary or to re-edit it, without Apple's agreement. (Buckley Decl., Ex. 15.)  SATV advised Ace's counsel that SATV had acquired

---

[6] Although the Court invited SATV and Apple to file a motion to dismiss if they wished to have the case dismissed rather than stayed, they did not do so.

WPMC's rights in the Original Documentary from WPMC's Liquidator and that SATV assigned those rights to Apple, providing the documents reflecting SATV's acquisition of rights from WPMC's Liquidator, SATV's assignment to Apple and the Deed of Settlement reflecting SATV's acquisition from the Liquidator of Iambic of all rights Iambic held in the Original Documentary.[7]   (Buckley Decl., Exs. 16 through 20.)   In short, the documents provided negate any possible claim of Ace.

### Ace's Documents Negate Any Alleged Right to Re-Edit The Documentary

Ace's assertion that it had the right to re-edit the Original Documentary is squarely prohibited by the UK Court's injunction order. Thus, Ace has asserted that the UK Court's injunction order is meaningless as to it (despite principles of Comity and its having been served with a copy of the injunction order).  Instead, Ace contends that CMC, which never had any rights in the Original Documentary, somehow magically acquired them from Iambic or WPMC (apparently without any disclosure to the UK Court or the Liquidators for Iambic and WPMC). But the "agreements" provided by Ace as showing the rights of CMC in the Original Documentary actually show the exact opposite and SATV's counsel so advised Ace's counsel (although it is so clear that CMC has no such rights that it is inconceivable that Ace's counsel could have thought otherwise).

In the first heavily-redacted agreement, apparently signed by CMC on July 6, 2009, CMC granted Iambic the "exclusive, perpetual, worldwide rights **to exploit the Film** in the Programme (to be produced by Iambic at its cost), and separate from the Programme."  The **"Film" is defined as "a 'lost' master tape of The Beatles' in concert at the Washington Coliseum in February 1964.**  (Buckley Decl., Ex. 11; emphasis added.)  **"Programme"** is

---

[7] Ace's counsel promised to provide SATV's counsel with a copy of the Re-Edit of the Original Documentary but has failed and refused to do so. (See Buckley Decl., Ex. 16.)

defined as an **"audio-visual production to be produced by [Iambic] at [Iambic's] cost, and based on and incorporating the Film**." (*Id.*; emphasis added). The second agreement, dated July 18, 2010, appears to substitute WPMC for Iambic in the July 6, 2009 agreement.  (*Id.*) The copy of the "novation" provided by Ace's counsel is not signed by Iambic or WPMC (but whether it is or is not executed is meaningless as explained below).  (*Id.*)

Ace's counsel contends that under these two agreements, in the event of a liquidation of Iambic, CMC would supposedly receive the rights in the "Programme" (*i.e.*, the Original Documentary).  Ace's counsel further contends that under the "novation," if WPMC were liquidated, CMC would also receive the rights in the "Programme."  But that is not what the agreements say.  Instead, the only thing CMC would supposedly receive in the event of a liquidation of Iambic and/or WPMC is the "Film."  But the "Film" is only the Betacam copy of the Beatles Concert Video that CMC acquired.  It is the "Programme," not the "Film," that is the Original Documentary.

Thus, even assuming these agreements had any validity and assuming WPMC actually signed such agreement, CMC obtained **no ownership rights in the "Programme"** (the Original Documentary) and could not have conveyed any such rights to Ace.

This is entirely consistent with WPMC's representations in the UK Action and its liquidation proceeding that it owned the Original Documentary. (Buckley Decl., Exs. 6 and 7.) In fact, those same agreements were introduced at the UK trial and are discussed in the UK Court's Decision, but not once did WPMC contend that those agreements granted rights to CMC.  (*Id.*, Ex. 7 at pars. 20 and 44.)  Moreover, Ace's own allegations in both of its actions in this Court acknowledge that CMC only owned *a Betacam copy of a tape of The Beatles' Concert Video.* (*Id.*, Ex. 1 at par. 31 "[i]n 2009, Karnbach sold a Betacam copy of the Tape

and all right, title and interest thereto in Concert Magic, Inc. ("CMI"). CMI subsequently provided the Tape to [WPMC], a production company that, together with [Iambic], produced the Documentary and granted distribution rights to Ace….")  (*See also* Buckley Decl., Ex. 3 at par. 41.)

Further, Ace refers to CMC several times in its 2013 amended complaint, and in its new complaint, never once suggesting that CMC has or had any rights in the Original Documentary. Ace still maintains, exactly as it did in 2013, that Iambic and WPMC "produced the [Original] Documentary and granted distribution rights to Ace…." (Buckley Decl., Ex. 1 at par. 31; Ex. 3 at par. 41.)

The third document provided by Ace's counsel purportedly in support of its new-found claim of ownership of a re-edited version of the Original Documentary is a November 9, 2017 letter that he wrote to WPMC's liquidator stating that: "[W]e have been in periodic contact with your office concerning the interest of Concert Magic, Inc. ("CMI") in acquiring all right, title and interest in the physical copies of 'Beatles The Lost Concert' documentary and together with intellectual property, distribution and exhibition rights, worldwide and/or North America only." (*Id.* at Ex. 11.)  Why would CMC seek to purchase what Ace now claims CMC owns?  Because it is clear that CMC owns nothing, other than perhaps the Betacam copy of the Beatles Concert Video.  That is not the Original Documentary.  It appears that CMC and CMI are one and the same and that their names are used interchangeably insofar as Ace alleges in the complaint that CMI acquired the Betacam copy of The Beatles Concert Video, and the "agreements" that Ace provided to suggest that its licensor, WPMC, had no rights in the Original Documentary are instead with CMC.

In sum, WPMC repeatedly represented that it owned all rights in the Documentary and concert footage.  WPMC, as the rights holder, defended the UK copyright infringement action.[8] Ace alleged in the prior action, and here, that it had the right to exploit the Original Documentary in the United States based on its contract with WPMC.  Even the CMC agreements provided by Ace's counsel, which he seems to mistakenly believe conveyed the rights of WPMC and/or Iambic in the Original Documentary to CMC, reflect that WPMC was the owner of all rights in the Original Documentary and CMC never acquired such rights.  If WPMC had no rights, Ace obtained nothing from WPMC (and CMC had nothing to convey to Ace regardless).  If WPMC had the rights Ace's pleadings repeatedly claim it had, then Ace's rights long ago expired (and they never included a right to edit the Original Documentary).  If Ace's rights derive from WPMC, then Ace could not edit the Original Documentary without the permission of the UK Court (and it could not exploit any version of the Original Documentary without the permission of Apple and SATV.

In short, Ace has no standing to pursue its claims and it could not pursue them if it had standing without joining Apple as an indispensable party.

## ARGUMENT

### I.  ACE LACKS STANDING TO BRING THIS LAWSUIT

Ace's complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of standing.[9]  To survive a motion to dismiss under Rule 12(b)(6), the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level . . ."

---

[8] Mr. Hunt testified at the UK trial that WPMC was the owner of all rights in the Original Documentary (Buckley Decl. Exs. 6 at par. 5; 5 at par. 4 and 4 at par. 7.)

[9] Motions for dismissal for lack of standing have been brought under Fed. R. Civ. P. 12(b)(1) applicable to a lack of subject matter jurisdiction, as well as Rule 12(b)(6). *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 89 n.6 (2d Cir. 2006).

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted); *see also Colliton v. Donnelly,* 399 F. App'x 619, 620 (2d Cir. 2010) (the complaint must plead enough facts to state a claim to relief that is plausible on its face). Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). While the allegations of the complaint must be taken as true on a Rule 12(b)(6) motion to dismiss, "conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir. 1994) (citation & quotations omitted); *Colliton,* 399 F. App'x at 620. "Simply, bald assertions and conclusions of law do not prevent the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6)." *Oparaji v. City of N.Y.,* No. 97-14967, 1998 U.S. App. LEXIS 14967, at *4 (2d Cir. Apr. 21, 1998) (internal citations & quotations omitted).

Further, "[i]n considering a motion to dismiss, a court may consider documents annexed to the complaint or incorporated in the complaint by reference without converting the motion to dismiss into a motion for summary judgment." *Graham v. Barriger,* 699 F. Supp. 2d 612, 623 (S.D.N.Y. 2009) (citations omitted); *see also Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").

Article III of the Constitution limits the jurisdiction of federal courts to "Cases and Controversies," which restrict the authority of federal courts to resolving the legal rights of litigants in actual controversies. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). "As an incident to the elaboration of this bedrock requirement," a plaintiff seeking to

maintain an action in federal court is "always required" to have standing. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Thus, plaintiff must have suffered an injury in fact which is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Where a plaintiff lacks standing, a court is divested of subject matter jurisdiction. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). Where, as here, subject matter jurisdiction is contested, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits. *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." (citation omitted). Ace lacks standing to seek a declaration that SATV's Lennon/McCartney songs are in the public domain, or alternatively that the re-edited version of the Original Documentary constitutes fair use because it has no right to exploit the Re-Edit even if, arguendo, the Court were to find that SATV's songs are in the public domain or that their use in the Re-Edit is fair use.

In its complaint, Ace makes the same allegations that it made in its prior complaint regarding the genesis of its purported rights to distribute the Original Documentary, namely, that its rights derive from a license agreement with the producers, Iambic and WPMC. (Buckley Decl., Ex. 1 and 3.) It is undisputed that this alleged license agreement expired long ago and conveyed no right to edit the Original Documentary so it cannot be this license agreement that provides the basis on which Ace has any standing to make the claims here.

Moreover, it is undisputed that Iambic was placed in liquidation prior to the trial of the UK Action. and that SATV acquired from Iambic's Liquidator all of Iambic's rights in the Original Documentary. (*Id.* at Ex. 10.)  It is also undisputed that the UK Court permanently enjoined WPMC from exploiting the Original Documentary, and directed that all but one copy of the Original Documentary be turned over to SATV's solicitors, and the UK Court permitted WPMC to keep that one copy solely in the event that it wished to apply for permission to edit the Original Documentary, which WPMC never did.  If Ace's purported licensor is permanently enjoined from exploiting the Original Documentary – and it is undisputed that Ace is fully aware of the UK injunction order-- Ace cannot exploit it, or exercise any of the rights of a copyright owner such as creating a derivative work without acting in violation of the UK injunction order.  Further, the UK injunction order required that WPMC collect the copy it gave to Ace and thus Ace had no right to even possess a copy of the Original Documentary, much less create the Re-Edit.

Moreover, it is undisputed that SATV acquired from WPMC's Liquidator all of WPMC's rights in the Original Documentary, and that SATV assigned those rights to Apple.  Ace did not allege that it obtained any right to distribute or exploit the Original Documentary from CMI or CMC – although it seems now to want to make such assertion in the face of the undisputed evidence that its existing license provides no such rights and that all rights of Iambic and WPMC are now housed exclusively in SATV and Apple.  But in any event, the agreements that Ace now contends vest rights in CMC actually prove the opposite.

Because Ace has no right to exploit the Original Documentary or the Re-Edit, Ace lacks standing to argue that use of the Lennon/McCarthy songs constitute a fair use, or that the songs are in the public domain.

**II.**   **THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE PARTY**

Rule 19 of the Federal Rules of Civil Procedure dictates that this action be dismissed on the ground that Ace failed to join indispensable party - Apple.  Rule 19 establishes a two-step test. *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724-25 (2d Cir. 2000), *overruled on other grounds*, *Balestriere PLLC v. CMA Trading, Inc.*, No. 11 Civ. 9459, 2014 WL 929813 (S.D.N.Y. Mar. 7, 2014).  First, the Court must determine whether an absent party belongs in the suit, and thus, is necessary under Rule 19(a).  (*Id.*)  Under Rule 19(a)(1), an absent party is considered required if, among other things, in the party's absence, complete relief cannot be accorded among the current parties in the action.

A motion to dismiss a complaint for failure to join a party under Rule 19 is a motion under Fed. R. Civ. P. 12(b)(7):

> "The party moving to dismiss under Rule 12(b)(7) bears the burden of proving that the absent person is required and indispensable under Rule 19. In ruling on the motion, the court must accept the allegations in the complaint as true, **but may also consider affidavits and other supporting materials**."

1 Federal Rules of Civil Procedure, Rules and Commentary Rule 12 (Feb. 2018) (emphasis added). *Dumann Realty, LLC v. Faust*, 267 F.R.D 101, 101 n.1 (S.D.N.Y. 2010) ("When reviewing a motion to dismiss under Rule 12(b)(7), the Court may consider documents and facts outside the pleadings.") (citation omitted).

Apple is indisputably a necessary party under Rule 19(a)(1).  Ace asks this Court to approve its exploitation of the Re-Edit based on the fair use doctrine.  Even if, *arguendo*, the Court were to find that the Re-Edit's use of the Lennon/McCartney songs were a fair use (and no one has seen this alleged re-edit), Ace would first have to establish it had the right to edit the Original Documentary and to then exploit the Re-Edit.  But its long-since expired license from WPMC did not convey such right.  Neither Apple nor SAT granted Ace such right and

19

CMC never had the right to grant.  But to even address the right, in the face of Apple's ownership of the Original Documentary (acquired from SATV which acquired it from WPMC's Liquidator), the rights of Apple are directly implicated as it is the owner of all rights previously owned by WPMC. The right to create a derivative work of the Original Documentary, *i.e.*, the Re-Edit, belongs exclusively to Apple.

Moreover, Apple owns and controls the rights to use The Beatles' name(s) and likenesses, which is not subject to a "fair use" defense.  Accordingly, Apple has every right to prohibit Ace from exploiting the Re-Edit, even if, *arguendo*, Ace's use of the Lennon/McCartney songs  could be deemed a fair use (a question that one does not even reach unless and until one first concludes that Ace has a right to edit and distribute the Original Documentary or the Re-Edit (a conclusion that cannot be reached in the absence of Apple).

It is clear that complete relief cannot be granted in the absence of Apple, and thus, Apple is a necessary party for the purposes of Rule 19(a)(1). *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp.2d 262, 290 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018) ("[C]ourts may not entertain actions for declaratory judgment when the parties are asking for an advisory opinion . . ." (quoting *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (internal citations omitted))).

If the absent party is necessary but joinder is not feasible, the Court must determine whether the absent party is indispensable under Rule 19(b).  *Viacom Int'l*, 212 F.3d at 725.  If the Court finds that the absent party is indispensable, Rule 19(b) requires that the action be dismissed. *Id.*  In making that determination, the Court must consider the following factors:

> (1) the what extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the

person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b).

First, it is well settled that where joinder is not feasible a copyright owner is an indispensable party in an action affecting their copyright rights. *First Fin. Mktg. Servs. Grp., Inc. v. Field Promotions, Inc.*, 286 F. Supp. 295, 298 (S.D.N.Y. 1968) ("It is familiar law that the copyright owner is an indispensable party to a suit where the validity of his copyright is in issue.") (citation omitted); *see Lipton v. Nature Co.*, 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992) (copyright owner an indispensable party to an infringement action).  Apple is the owner of all right, title and interest in the Original Documentary, and as such, it has the exclusive right to create, or authorize others to create derivative works. The Re-Edit is a derivative work and it is undisputed that Apple has not authorized Ace to create the Re-Edit.

By seeking a declaration that it is free to exploit a re-edited version of the Original Documentary purportedly because it is a fair use of the Lennon/McCartney songs or because the songs are supposedly in the public domain (a contention which the UK Court has already rejected, in a decision under US law entitled to Comity), Ace is necessarily trading on rights in the Original Documentary that belong to Apple as does the right to control the use of The Beatles' names and likenesses. If joinder of Apple is not feasible, Apple undoubtedly is an indispensable party.  *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510, 517 (S.D.N.Y.1985) ("Absent special circumstances joinder should be required in cases challenging the validity of the copyright upon which rest the rights of the person to be joined . . .") (citations omitted).  Joinder is not feasible because the Court lacks personal jurisdiction over Apple unless Apple consents to jurisdiction in this Court (as it voluntarily did in the prior action).

Even in the absence of such a per se rule, application of the Rule 19(b) factors also confirms that Apple is an indispensable party. Specifically, Apple will be prejudiced if a judgment is rendered in its absence. To the extent Ace is asking this Court for a declaration that it is permitted to exploit the Re-Edit, there is no way to avoid or minimize prejudice to Apple as its ownership rights in the Original Documentary are being affected. Ace can sue Apple in the United Kingdom if it wishes to pursue a case that has no basis (since the newly alleged source of Ace's supposed rights in the Re-Edit, CMC, plainly has no such rights to grant and the rights of its original grantor, WPMC, are now owned by Apple, which granted no such rights – and the original license from WPMC is long expired and never granted any edit rights anyway).

## CONCLUSION

For all of the foregoing reasons, SATV respectfully requests that the Court dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(b)(7) and 19(b) for failure to join an indispensable party, and that it grant SATV such other and further relief as it deems just and proper.

Dated: New York, New York
        July 2, 2018                                    PRYOR CASHMAN


                                            By:   /s/ Lisa M. Buckley
                                                  Donald S Zakarin (DZ 6355)
                                                  dzakarin@pryorcashman.com
                                                  Lisa M. Buckley (LB 5541)
                                                  lbuckley@pryorcashman.com
                                            7 Times Square
                                            New York, New York 10036
                                            Tel: (212) 421-4100
                                            Fax: (212) 326-0806
                                            *Attorneys for Defendant Sony/ATV Music
                                            Publishing LLC*